IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Amy B., | : | |
|    Plaintiff, | : | |
| | | Case No. 1:22-cv-00486-TPK |
| vs. | : | |
| | : | **Magistrate Judge Kemp** |
| Commissioner of Social Security, | : | |
|    Defendant. | : | |

**OPINION AND ORDER**

     Plaintiff filed this action seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on June 17, 2022, denied her applications for social security disability benefits and supplemental security income.  Plaintiff filed a statement of errors on November 10, 2022 (Doc. 9) to which the Commissioner responded on December 15, 2022 (Doc. 11).  For the following reasons, the Court will **SUSTAIN** Plaintiff's statement of errors and **REMAND** the case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

**I.  INTRODUCTION**

     Plaintiff filed her applications on March 21, 2019, alleging that she became disabled on February 7, 2019.  After administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on June 10, 2020.  Plaintiff and a vocational expert, Scott B. Silver, testified at the hearing.

     In a decision dated June 24, 2020, the ALJ determined that Plaintiff was not entitled to benefits.  He first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023, and that she had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next concluded that Plaintiff suffered from severe impairments including degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral hands, bilateral carpal tunnel syndrome, and bilateral thumb CMCJ arthritis.  However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

     Moving to the next step of the sequential evaluation process, the ALJ found that, during the relevant time period, Plaintiff could perform a reduced range of light work.  She required a sit/stand option every fifteen minutes and she could not climb ladders, ropes, or scaffolds.

However, she retained the ability to stoop, kneel, crouch, crawl, and climb ramps and stairs on an occasional basis. She could frequently reach in all directions except that she needed to avoid overhead work, and she could also handle and finger bilaterally on a frequent basis. Finally, she had to avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights.

Moving on with the process, the ALJ determined that with these limitations, Plaintiff could not, based on testimony given by the vocational expert, perform her past relevant work as a bartender and fast food worker. However, the ALJ found that there were still light, unskilled jobs she could do, including collator, router, and inspector/hand package, and that these jobs existed in substantial numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff raises four arguments. She contends (1) that the ALJ erred in finding that she could do light work activity because that finding is not consistent with a sit/stand option every fifteen minutes; (2) that substantial evidence does not support the finding that Plaintiff could finger and handle bilaterally on a frequent basis; (3) that the ALJ did not properly evaluate the opinion evidence; and (4) that the ALJ improperly used evidence of Plaintiff's part-time work activity and her activities of daily living as a basis for finding that she could engage in substantial gainful activity.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020),

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial

evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

#### A. Hearing Testimony

Plaintiff, who was years 52 old at the time of the administrative hearing, testified, first, that she lived alone and, with occasional help from a friend, was able to take care of her personal needs. She was able to drive, but avoided highway driving. She was working part-time at an Arby's restaurant greeting customers and taking orders. Before that, she had worked as a bartender, as a server, and at other jobs but on a less frequent basis.

When asked why she could no longer work on a full-time basis, Plaintiff said that she had nerve damage and bone disease in her lower back. She could only sit for very short periods of time and had to use a cane when standing. She also used a cane while walking, and could walk for about ten minutes. She could not reach overhead without pain and could not bend over to reach things on lower shelves. Plaintiff spent her free time watching television, usually while lying down. Due to problems with her hands and wrists, she could not lift or hold a gallon of milk, and she was awaiting hand surgery.

The vocational expert, Mr. Silver, first classified Plaintiff's past jobs as a bartender and fast food worker as light and either semi-skilled or unskilled. He was then asked questions about someone with Plaintiff's vocational profile who was limited to light work with the need to alternate among sitting, standing, and walking every fifteen minutes, and with a number of other environmental and postural limitations. He replied that such a person could not do Plaintiff's past work, but that someone who needed that type of sit/stand option could do light jobs like collator, router, and inspector and hand packager. He also provided numbers for those jobs as they existed in the national economy. Further, he testified that the type of job that Plaintiff said she was doing at Arby's, which involved some accommodations, was not competitive employment.

#### B. Relevant Medical Records

The relevant medical records are voluminous, and only the most significant ones will be summarized here. Both the ALJ's decision and Plaintiff's memorandum provide a comprehensive recap of that evidence as well.

Briefly, Plaintiff was reporting both back and neck pain and bilateral hand pain throughout 2016, 2017, and 2018. The hand pain had been present for many years before that. She said she had stiffness and swelling in her joints and was that she was awaiting hand surgery.

Her doctors had prescribed various pain medications for her which she described as providing functional relief. Other than some bilateral lumbar facet tenderness, the examination results as noted by her primary care physician in 2018 were essentially normal, but other notes from the same time period made at the University of Cincinnati Hospital pain center showed decreased range of motion, tenderness, and pain in the neck and back. X-rays of the cervical spine showed advanced degenerative disc disease at C5-C7 as well as multilevel facet arthropathy, and abnormalities were observed on hand x-rays as well. Tramadol appeared to improve her hand pain and function.

Plaintiff underwent a lumbar injection in 2019 and also had physical therapy, but she did not think the latter process helped her. Surgery was recommended to treat her hand pain, which appeared to be getting progressively worse, and she had an injection in her hands as well. One treatment note indicated, however, that her hand pain was out of proportion to nearly all of her examination movements. The notes also show a diagnosis of bilateral carpal tunnel syndrome and bilateral thumb CMCJ arthritis, and, on examination, Plaintiff exhibited decreased range of motion, tenderness, and pain in both hands.

### C. Opinion Evidence

There are two physical functional capacity assessments in the record from treating sources, both dated in 2020. The first, completed by Dr. Awosika, indicates that Plaintiff's diagnoses included chronic pain syndrome secondary to osteoarthritis, cervical and lumbar spondylosis, cervical disc degeneration, and neuropathic pain. In her opinion, those impairments would require Plaintiff to shift positions from sitting, standing, and walking at will, interfere with Plaintiff's ability to maintain attention and concentration, and require Plaintiff to take additional, unscheduled work breaks and miss work more than four times per month. (Tr. 2297-98). The second, from Kristen Menkhaus-Saylor, a nurse practitioner, contained similar restrictions. (Tr. 2301-02).

State agency reviewer Dr. McKee expressed the opinion, on June 13, 2019, that Plaintiff could do a limited range of light work but was limited to occasional handling and fingering on the right and frequent handling and fingering on the left. (Tr. 651-53). The second reviewer, Dr. Green, concluded on September 15, 2019, that Plaintiff could frequently handle and finger on both the left and right and that she was limited in reaching in front, laterally, and overhead. She was also limited to frequent pushing or pulling and operation of hand or foot controls and should not drive as part of employment. (Tr. 676-78).

### IV. DISCUSSION

#### A. Weighing the Medical Evidence

In what is designated as her third claim of error (and which, because it is case-dispositive, the Court will address first), Plaintiff asserts that the ALJ did not follow the law when weighing the opinions of the treating sources. She notes that under current regulations, the

issues of supportability (how well an opinion is supported by the applicable medical records) and consistency (how consistent an opinion is with the totality of the record) are the two most important factors an ALJ must consider, and points out that an ALJ must explicitly consider these factors. She then argues that the ALJ in this case erred in her evaluation of the opinions of both Dr. Awosika and nurse practitioner Menkhaus-Saylor, providing reasons for rejecting their opinions which are not borne out by the record. As part of this claim of error, she also asserts that the ALJ's finding that Plaintiff could use her hands to handle and finger on a frequent basis contradicted the medical findings made by the physicians who treated her for hand and wrist pain. The Commissioner responds that the ALJ had an adequate basis for, and provided a sufficient explanation for, her weighing of these opinions.

The current regulation governing consideration of medical opinion evidence, 20 C.F.R. § 416.920c(a), effective on March 27, 2017, provides in part that

> [w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

As this Court has noted,

> Significantly, because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "will explain" how he or she considered them. 20 C.F.R. § 416.920c(b)(2) (emphasis added).2 As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2).

*Wilson C. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4244215, at *6 (S.D. Ohio Sept. 15, 2022).

The ALJ provided this explanation for the weight she gave to the two treating source

opinions. First, as to Dr. Awosika, the ALJ reasoned that the opinion was unpersuasive because "the doctor's own record does not support these limitations." (Tr. 589). The only record to which the ALJ referred was a note from January 20, 2020 (the first time Dr. Awosika examined Plaintiff) which was a follow-up examination focused on Plaintiff's complaints of hearing loss and hypothyroidism. *Id*. The ALJ rejected Ms. Menkhaus-Saylor's opinion "for the same reasons stated above regarding the doctor's opinion ...." *Id*. The ALJ added, in addressing the argument that these opinions restricted Plaintiff to less than sedentary work, that "neither of these opinions provide a function-by-function assessment of the claimant's ability to perform any type of work." *Id*.

This last statement is not supported by the forms completed by these two sources, both of whom concluded that Plaintiff needed to be able to change positions at will - which is a functional assessment - and to take unscheduled work breaks. As to the balance of the explanation, the Court finds it wholly inadequate for the following reasons.

The dual concepts of supportability and consistency mean, if nothing else, that an ALJ must consider the entirety of the evidence, and not just the results of one or two isolated records, in determining if there is support for a particular medical opinion and if that opinion is consistent with and supported by the medical and other evidence. Consistency and supportability are separate inquiries, and simply discussing whether an opinion is consistent with the record does not satisfy the requirement that an ALJ also evaluate, and articulate, how well it is supported both by the medical evidence and other evidence. *See, e.g., Wilson C., supra*, at *8.

As Plaintiff points out, there is a wealth of medical evidence which the ALJ did not include in her brief discussion of the consistency factor, and, given the treatment relationship, it is evidence that was available to (and, in some cases, compiled by) both Dr. Awosika and Ms. Menkhaus-Saylor. And it is not only their notes which are relevant, but the notes from other treating sources. Further, the ALJ made absolutely no mention of the supportability factor, nor did she provide any reasoning about why there was no support for the limitations in question either in the medical evidence or the other evidence of record, much of which is, in fact, supportive of the opinion that Plaintiff could not sit for even the fifteen minutes described in the ALJ's residual functional capacity finding and that she needed frequent work breaks (a feature of her current part-time employment). This type of cursory articulation is simply insufficient to satisfy the ALJ's obligation to assure the claimant and a reviewing court that the ALJ applied these factors as contemplated by the governing law. A remand is therefore justified based on this claim of error.

The Court notes, in passing, that there is at least one other similar issue which might be productively addressed on remand. Dr. Green, whose opinion was found by the ALJ to be persuasive except as to its conclusions about Plaintiff's ability to stand and walk, indicated that Plaintiff also had limitations in her ability to push or pull or operate hand controls due to cervical degenerative disc disease and in her ability to engage in commercial driving. These limitations are not mentioned in the ALJ's residual functional capacity finding, nor were they mentioned in the vocational testimony. A remand will also provide an opportunity for this issue to be

addressed.

### B. Other Claims

The Court will address Plaintiff's other claims only to the extent that, if they also have merit, it might affect the remedy to which Plaintiff is entitled. For example, Plaintiff argues that the ALJ erred by finding that she could perform a limited range of light work, a finding she contends is inconsistent with the ALJ's additional finding that she needed to be able to shift positions between sitting and standing every fifteen minutes. Since light work usually requires a person to be able to stand or walk about six hours in a workday - not four hours, which is implied from the finding that she needed to spend roughly equal amounts of time every day sitting and standing - Plaintiff concludes that she should have been limited to the performance of sedentary work, and that, under the Medical-Vocational Guidelines, should have been found to be disabled. The Commissioner, citing to Social Security Ruling (SSR) 83-10, counters that the finding that Plaintiff could do a limited range of light work was made in accordance with the applicable law.

The relevant portion of SSR 83-10 reads as follows:

> *Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).

It further provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." It is apparent that, given the residual functional capacity as determined by the ALJ, Plaintiff is not capable of performing a full range of light work. But that does not definitively answer the issue raised by Plaintiff in this claim of error.

SSR 83-12 also contains language applicable to that situation. It recognizes that a claimant's functional capacity may not coincide exactly with the requirements of work at any particular exertional level, and that the choice of which exertional level to use when applying the Medical-Vocational Guidelines may determine the outcome of the case. Section 2(c) of that Ruling states:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are

> involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

When applying this concept, courts have noted that

> the legally non-binding POMS provides further guidance, stating when a plaintiff's "exertional capacity falls in the middle of two rules and the rules direct opposite conclusions," if "the claimant has a slightly reduced capacity for the higher level of exertion," the higher-numbered rule applies and the claimant is not disabled but, if "the claimant has a significantly reduced capacity for the higher level of exertion," the lower-numbered rule applies and the claimant is disabled.

*See Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 969 (E.D. Mich. 2017). That language indicates, at the very least, that there are no hard and fast rules to be applied when this type of "in-between" situation is presented. And courts have consistently upheld an ALJ's conclusion that a claimant who otherwise satisfies the exertional requirements of light work can do a reduced range of such work when limited by a sit-stand option. *See, e.g., Icke v. Commissioner of Social Security*, 2017 WL 2426246 (N.D. Ohio May 16, 2017), *adopted and affirmed* 2017 WL 2418729 (N.D. Ohio June 2, 2017) (claimant limited to four hours of standing or walking); *Blankenship v. Comm'r of Soc. Sec.*, 624 Fed.Appx. 419, 428 (6th Cir. 2015) (claimant limited to two hours). As this Court has recently observed, "courts throughout the Sixth Circuit routinely reject Plaintiff's argument." *Michelle V. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5149, 2022 WL 4298215, at *8 (S.D. Ohio Sept. 19, 2022). Plaintiff has cited no contrary case law in either her opening or reply brief. Consequently, the Court finds no merit in this claim.

Plaintiff also argues that the ALJ erred by finding that she had the ability to finger and handle on a frequent, as opposed to occasional, basis, a limitations which is not addressed by the two treating source opinions which the ALJ will have to reevaluate. Plaintiff notes that her carpal tunnel syndrome is severe enough to warrant surgery (although the surgery has been postponed for financial reasons and, later, due to the pandemic) and that this condition, combined with the arthritis in her wrists and thumbs, limits her fingering and handling ability to a greater extent than found by the ALJ. To the extent that the second state agency reviewer, Dr. Green, concluded that she was not that restricted, Plaintiff contends that his opinion (and the basis of his disagreement with Dr. McKee, who, as noted above, limited her to occasional fingering and handling on the right) provided no explanation for his conclusion and should not have been accepted by the ALJ. The Commissioner's position is that the ALJ acted within her discretion by finding Dr. Green's opinion to be the more persuasive, based on the fact that it relied on additional medical records not available to Dr. McKee.

The ALJ discussed both of these opinions at some length. She found Dr. McKee's opinion unpersuasive as a whole because "it does not take into consideration Plaintiff's back issues; therefore, not entirely consistent with the record." (Tr. 589). She also attributed lesser

weight to Dr. Green's opinion, but only as it related to his conclusions about Plaintiff's ability to stand and walk. She noted that he had considered both the back and hand issues, however, and found that part of his opinion persuasive. *Id*. The ALJ also noted that Plaintiff consistently reported hand and wrist pain and summarized findings from a 2019 examination, but also considered the fact that Plaintiff's reported pain was "out of proportion with nearly all exam movements including palpation of the dorsal proximal radium and range of motion of any digits." (Tr. 588). The ALJ had previously determined that Plaintiff's report of symptoms was not entirely consistent with the medical evidence. (Tr. 587).

There are no medical opinions about the functional limitations of Plaintiff's hands apart from those expressed by Drs. McKee and Green. Dr. Green's opinion was based on a more extensive record than Dr. McKee's, so there is a rational basis for the ALJ to have given more weight to it. Ordinarily, and ALJ is entitled to choose between conflicting medical opinions (especially those made through the same process, which, as here, was simply a review of the accumulated medical records) so long as the record contains some evidence supporting that choice. As this Court has said in the similar context of an ALJ's decision to credit the opinion of one non-treating but examining source over another, "[s]uch a conclusion falls within the ALJ's ''zone of choice' within which he can act without the fear of court interference.'" *Kent v. Comm'r of Soc. Sec.,* 142 F. Supp. 3d 643, 651 (S.D. Ohio 2015), *quoting Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The Court similarly finds no merit in Plaintiff's claim that the raw medical data concerning her wrist and hand condition is so compelling that the only reasonable conclusion to be drawn is that she could finger or handle only occasionally. That is a medical judgment the ALJ would not have been competent to make, and it contradicts the findings of both Dr. McKee as to Plaintiff's left hand and wrist, and Dr. Green as to both. Nevertheless, on remand, to the extent that there is additional evidence which suggests a worsening of Plaintiff's hand pain or functionality after Dr. Green expressed his opinion, the ALJ will have an opportunity to revisit this issue.

Plaintiff also makes the argument that both state agency physicians found her report of symptoms to be fully consistent with the evidence, but the ALJ made a different finding. While an ALJ is required to consider such statements, *see* SSR 16-3p, it is also true that neither physician appeared to believe that her symptoms were work-preclusive (although the record does not reflect whether there are jobs that someone with the more severe limitation described by Dr. Mckee could perform). It would be helpful, however, on remand, for the ALJ to heed the directive from SSR 16-3p that "[a]djudicators at the hearing level ... must consider the findings [about consistency] from these medical sources even though they are not bound by them."

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **SUSTAINS** Plaintiff's statement of errors and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

                                           /s/ Terence P. Kemp

                                                                **Terence P. Kemp**  
                                                                **United States Magistrate Judge**